UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                        :
SERGEY APIONISHEV,                      :
                                        :
                    Plaintiff,          :       **OPINION AND ORDER**
                                        :
                                        :       **09 Civ. 6471 (SAS)**
          - against -                   :
                                        :
COLUMBIA UNIVERSITY,                    :
                                        :
                    Defendant.          :
-------------------------------------------------------X

SHIRA A. SCHEINDLIN, U.S.D.J.:

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/25/11

## I.    INTRODUCTION

This action arises from Dr. Sergey Apionishev's employment as a

post-doctoral research scientist at Columbia University ("Columbia").  Proceeding

*pro se*, Apionishev alleges that Columbia discriminated against him during the

course of his employment on the basis of his disability, national origin, and sexual

orientation.  He also alleges that Columbia retaliated against him, and otherwise

continued to act improperly towards him, following his termination. In addition to

various common law claims, Apionishev brings claims pursuant to the Americans

with Disabilities Act of 1990 ("ADA"), Title VII of the Civil Rights Act of 1964

("Title VII"), New York State Human Rights Law ("NYSHRL"), and New York

City Human Rights Law ("NYCHRL").  Columbia now moves, under Federal Rule

of Civil Procedure 12(c), to dismiss most of plaintiff's claims on the grounds that

they are, *inter alia*, time-barred, violate the statute of frauds, or fail to state a claim

for relief.[1]  For the reasons set forth below, defendant's motion for judgment on the

pleadings is granted in its entirety.

## II.   BACKGROUND

### A.   Factual Overview[2]

Apionishev worked at Columbia as a Ph.D. Postdoctoral Associate

Research Scientist in the laboratory of Dr. Daniel Kalderon from October 1, 1999

to September 30, 2004. During the course of his employment, Apionishev asserts

that he was "treated less favorably than others because [he] was Russian" and

subjected to a hostile work environment.[3]  Apionishev also asserts that he suffered

---

[1]   Columbia does not seek dismissal of (1) any claims asserted under Title VII and the ADA for improper references circulated by plaintiff's former supervisor after July 21, 2006, or (2) any claims asserted as intentional torts for improper references circulated by plaintiff's former supervisor after July 21, 2008. *See* Defendant's Memorandum of Law in Support of Its Motion for Judgment on the Pleadings ("Def. Mem.") at 20.

This case has been consolidated with two related actions, 10 Civ. 7742 and 10 Civ. 9287, each of which has pending motions to dismiss. This Opinion directly addresses only the motion for judgment on the pleadings filed in the first action, 09 Civ. 6471. Nonetheless, to the extent that any later asserted claims overlap with those considered here, my rulings apply.

[2]   All the facts set forth in this section are drawn from the Second Amended Complaint ("SAC") and are presumed true for purposes of this motion.

[3]   SAC at 3.

2

discrimination because he is gay and HIV-positive.  Apionishev filed a complaint

of discrimination and harassment, and otherwise presented his grievances to

various administrative officials at Columbia, but that his concerns were ignored.

Moreover, he contends that he was terminated in retaliation for his complaints.

Following his termination, Columbia continued to retaliate against

him, through Dr. Kalderon, by sending negative recommendation letters and

otherwise providing negative references to prospective employers through at least

June 2009.  Apionishev asserts that the content of these letters and the substance of

these references precluded him from finding alternative scientific employment.

Based on the foregoing events, Apionishev asserts the following

claims against Columbia:[4] (1) discrimination based on national origin; (2) hostile

work environment and discrimination based on sexual orientation; (3)

discrimination based on disability; (5) unlawful termination based on disability,

sexual orientation and HIV-positive status; (6) unlawful termination in retaliation;

(9) intentional retaliation by means of libel, defamation, and slander; (10)

intentional slander, libel, and retaliation; (11) breach of contract; and (12) ongoing

retaliation.[5]

---

[4]      Plaintiff does not list any claims numbered 4, 7, or 8.

[5]      *See* SAC.

3

### B.   Procedural History

Apionishev filed a charge with the Equal Employment Opportunity Commission ("EEOC") on August 28, 2008 and received a right to sue letter on April 19, 2009.  He filed his initial complaint in this Court on July 6, 2009, asserting claims under Title VII, ADA, and the NYCHRL on the basis of conduct occurring on March 15, 2006.  Apionishev alleged discrimination based on his disability (HIV/AIDS) and national origin (Russian), failure to accommodate his disability, and retaliation.[6]

In an October 26, 2009 letter, Columbia notified the Court that it intended to file a motion to dismiss.  Columbia claimed that Apionishev's substantive discrimination claims were time-barred, and that his retaliation claim was unsupported and unfounded.[7]  In a November 13, 2009 order, the Court set a schedule that provided for Apionishev's motion to dismiss to be filed on November 30, 2009.[8]

---

[6]      *See* Complaint.  This case was originally assigned to Judge Paul Gardephe, but was transferred to me on March 19, 2011.

[7]      *See* Docket Entry ("DE") 16.

[8]      *See* DE 5.

4

On November 20, 2009, however, Apionishev filed an Amended Complaint.[9] The Amended Complaint cited the same statutes, but expanded the adverse employment actions to include termination, failure to promote, unequal terms and conditions of employment, and "defamation, slander." In addition to national origin and disability discrimination, Apionishev alleged that he had suffered discrimination as a result of his sexual orientation. He claimed that he had suffered discriminatory acts in June 2009, March 2009, May 2008 and November 2007.[10]

In a November 24, 2009 letter, Columbia notified the Court that it would answer rather than move to dismiss.[11] Columbia explained that the Amended Complaint alleged that Dr. Kalderon had sent out retaliatory negative recommendation letters within the limitations period. Columbia further stated that it would eventually move for summary judgment. On December 2, 2009, Columbia answered the Amended Complaint.[12]

---

[9]     *See* DE 9.

[10]    *See* Amended Complaint.

[11]    *See* DE 17.

[12]    *See* DE 11.

On November 25, 2009, Apionishev filed a motion for leave to file a Second Amended Complaint. The new Complaint cited the same statutes and alleged the same adverse employment actions as the Amended Complaint, but contained a much more detailed factual statement and supporting exhibits.[13]

At a February 3, 2010 court conference, Apionishev stated that he wished to file yet another amended complaint to add additional parties.[14]  In a February 4, 2010 order, the Court denied Apionishev's previously filed motion to file a SAC and ordered him to file a new motion for leave to file a SAC by February 10, 2010.  Apionishev filed that motion as directed.[15]

In an order dated May 3, 2010, the Court granted Apionishev's motion to file a SAC in part and denied it in part.[16]  Apionishev filed the SAC on

---

[13]    See DE 10.

[14]    See DE 18.

[15]    See DE 14.

[16]    See DE 19.  Apionishev sought to incorporate the following claims into the SAC: "(1) Discrimination Based On National Origin/Intentional Tort; (2) Hostile Work Environment/Discrimination Based on Sexual Orientation; (3) Discrimination Based On Disability; (4) Outrageous Negligence By Columbia University, Intentional Tort; (5) Unlawful Termination Based On Disability/Sexual Orientation; (6) Unlawful Termination In Retaliation; (7) Unreasonable/Illegal Behavior By Dr. Daniel Kalderon; (8) Intentional Invasion Of Privacy; (9) Intentional Retaliation By Means Of Libel, Defamation, Slandering; (10) Intentional Tort/Slander/Libel/Retaliation; (11) Intentional Britch (sic) Of

May 19, 2010.[17]  Columbia filed an answer on June 2, 2010,[18] followed by the

instant motion on June 8, 2010.[19]

## III.   LEGAL STANDARD

### A.   Judgment on the Pleadings

At any time after the pleadings close and before the trial commences,

a party may move for a judgment on the pleadings under Rule 12(c).[20]  A party is

entitled to judgment on the pleadings only if it is clear that no material issues of

fact remain to be resolved and that it is entitled to judgment as a matter of law.[21]

For example, dismissal of the complaint "'is appropriate when a defendant raises . .

. [a statutory bar] as an affirmative defense and it is clear from the face of the

---

Contract, Libel, Defamation; (12) Intentional Concealment Of Material Facts By
Columbia University In Order To Avoid Law Suit; [and] (13) Intentional
Retaliation/Tort Is Still Ongoing." *Id.*  The Court allowed all the claims to proceed
except claims (4), (7), (8) and (12).

[17]     *See* DE 20.

[18]     *See* DE 22.

[19]     *See* DE 25.

[20]     *See Frater v. Tigerpack Capital, Ltd.*, No. 98 Civ. 3306, 1998 WL
851591, at *1 (S.D.N.Y. Dec. 9, 1998) (citing 2 *Moore's Federal Practice* § 12.38
at 12-99).

[21]     *See Burns Int'l Sec. Servs. v. International Union, United Plant Guard
Workers of Am.*, 47 F.3d 14, 16 (2d Cir. 1994); *Carballo ex rel. Cortes v. Apfel*, 34
F. Supp. 2d 208, 214 (S.D.N.Y. 1999).

complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'"[22]

"'The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim.'"[23]  In either instance, the court must accept as true the non-movant's allegations, along with the allegations in the movant's pleading that the non-movant has admitted, and must draw all reasonable inferences in the non-movant's favor.[24]  The court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness."[25]

---

[22]    *Serrano v. USA United Transit Bus Inc.*, No. 09 Civ. 2710, 2009 WL 3698395, at *4 (E.D.N.Y. Nov. 3, 2009) (quoting *Conopco, Inc. v. Roll Int'l,*, 231 F.3d 82, 86 (2d Cir. 2000)).

[23]    *Wachovia Corp. v. Citigroup, Inc.*, 634 F. Supp. 2d 445, 450 (S.D.N.Y. 2009) (quoting *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 520 (2d Cir. 2006)).

[24]    *See id.*; *Frater*, 1998 WL 851591, at *1 (citing *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994)).  Because plaintiff is proceeding pro se, this Court is required to read his complaint liberally "to raise the strongest arguments that [it] suggests." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quotation marks and citation omitted).  *Accord Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed pro se is to be liberally construed.") (quotation marks and citation omitted).

[25]    *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quotation marks omitted).

The allegations in a complaint must meet a standard of "plausibility."[26] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that [plaintiff is entitled to relief]."[27] Plausibility "is not akin to a probability requirement;" rather plausibility requires "more than a sheer possibility . . . ."[28] Pleading a fact that is "merely consistent" does not satisfy the plausibility standard.[29]

The court "must limit itself to the facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference."[30] A document is considered incorporated by reference if it is "in a pleading . . . adopted by reference elsewhere in the same pleading or in any other pleading . . . ."[31] A court may also consider a document not specifically incorporated by reference but on which the complaint heavily relies and which is

---

[26]     *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007).

[27]     *Ashcroft v. Iqbal*, — U.S. —, —, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted).

[28]     *Id.* (quotation marks omitted).

[29]     *Id.* (quotation marks omitted).

[30]     *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

[31]     Fed. R. Civ. P. 10(c).

integral to the complaint.[32]   This is particularly true when the non-movant either had the document in its possession or knew of the document when bringing suit.[33] In addition, a court "'may . . . consider matters of which judicial notice may be taken.'"[34]   On the other hand, if a court is presented with material outside of the pleadings and not subject to judicial notice, it should either exclude the material in its consideration of the motion to dismiss or for judgment on the pleading, or consider the material after converting the motion into one for summary judgment.[35]

## B.    Statute of Limitations

### 1.    Federal Claims

Both the ADA and Title VII require claimants to file a charge of discrimination or retaliation with the EEOC within three hundred days of the discriminatory or retaliatory act.[36]   "The three hundred day period serves as a statute of limitations, and claims regarding acts that occurred more than three

---

[32]    *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

[33]    *See Edison Fund v. Cogent Inv. Strategies Fund, Ltd.*, 551 F. Supp. 2d 210, 217 (S.D.N.Y. 2008).

[34]    *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (quoting *Kramer*, 937 F.2d at 773).

[35]    *See Chambers*, 282 F.3d at 154.

[36]    *See* 42 U.S.C. § 12117(a) (ADA); 42 U.S.C. § 2000e-5(e)(1) (Title VII).

hundred days prior to the employee's initiation of administrative review are thus time-barred."[37]  Under the continuing violation doctrine, "[a]n exception exists for claims that the discriminatory acts were part of a continuing policy and practice of prohibited discrimination."[38]  However, "[t]his doctrine 'is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances.'"[39]

"The continuing violation doctrine applies to cases 'involving specific discriminatory policies or mechanisms such as discriminatory seniority lists. However, multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing

---

[37]     *Klein v. New York Univ.*, No. 07 Civ. 0160, 2008 WL 3843514, at *2 (S.D.N.Y. Aug. 14, 2008) (citing *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 766 (2d Cir. 1998). *Accord Falso v. Gates Chili Cent. School Dist.*, No. 10 Civ. 448, 2011 WL 350514, at * 1 (2d Cir. Feb. 7, 2011) ("[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.") (quotation marks and citation omitted).

[38]     *Montgomery v. Chertoff,* No. 03 Civ. 5387, 2007 WL 1233551, at *11 (E.D.N.Y. Apr. 25, 2007) (quotation marks and citation omitted).

[39]     *Id.* (quoting *Mirasol v. Gutierrez*, No. 05 Civ. 6368, 2006 WL 871028, at *3 (S.D.N.Y. Apr. 5, 2006)).

violation.'"[40]   "To bring a claim within the continuing violation exception, a

plaintiff must at the very least allege that one act of discrimination in furtherance

of the ongoing policy occurred within the limitations period."[41]

   In addition to timely filing a complaint with the EEOC, a plaintiff

must file a Title VII or ADA claim in federal court within three years of the alleged

discrimination.[42]   A plaintiff need not wait for the EEOC to decide the merits of his

charge before requesting a right to sue letter and filing a complaint in federal

court.[43]   Federal claims accrue when the plaintiff "knew or had reason to know of

the injury serving as the basis for [his] claim."[44]

   "Equitable tolling . . . is appropriate only in rare circumstances where

---

[40] *Valtchev v. City of New York*, No. 09 Civ. 4145, 2010 WL 4595539, at *1 (2d Cir. Nov. 15, 2010) (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993)).

[41] *Patterson v. County of Oneida*, 375 F.3d 206, 220 (2d Cir. 2004).

[42] *Pape v. Board of Educ. of Wappingers Central Sch. Dist.*, No. 07Civ. 8828, 2009 WL 3151200, at *8 (S.D.N.Y. Sept. 29, 2009) (noting that where a federal statute does not provide a statute of limitations period, as is the case with the ADA and Title VII, "the applicable limitations period is borrowed from the forum state statute of limitations" and that New York's three-year statute of limitations thereby governs these claims) (citing *Pearl v. City of Long Beach*, 296 F.3d 76, 79 (2d. Cir. 2002)).

[43] *See* 29 C.F.R. § 1601.28(a).

[44] *Pape*, 2009 WL 3151200, at *8 (quotation marks and citations omitted).

'a party is prevented in some extraordinary way from exercising his rights.'"[45]  "As a general matter, a litigant seeking equitable tolling must establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."[46]  "Circumstances that might warrant equitable tolling include, *inter alia*, a plaintiff's medical or mental impairment which prevented plaintiff from timely filing."[47]  Whether a person is "sufficiently mentally disabled to justify tolling of a [statute of] limitation is, under the law of this Circuit, highly case-specific" and the burden of demonstrating the appropriateness of equitable tolling lies with the plaintiff.[48]  Specifically, a plaintiff must establish through his pleadings how the particular disability "severely

---

[45]     *Falso*, 2011 WL 350514, at *2 (quoting *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003)).  *Accord Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990) ('Federal courts have typically extended equitable relief only sparingly . . . and have generally [not been] forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.").

[46]     *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010) (quotation marks and citation omitted).

[47]     *Baroor v. New York City Dept. of Educ.*, No. 06 Civ. 3965, 2009 WL 959537, at *5 (E.D.N.Y. Apr. 3, 2009) (citing *Chapman v. ChoiceCare L.I. Term Disability Plan*, 288 F.3d 506, 508, 512-14 (2d Cir. 2002); *Brown v. Parkchester South Condominiums*, 287 F.3d 58, 60 (2d Cir. 2002)).

[48]     *Boos v. Runyon*, 201 F.3d 178, 184-85 (2d Cir. 2000).

impair[ed] [his] ability to comply with the filing deadline, despite [his] diligent effort to do so."[49]

## 2.    State Claims

Discrimination claims brought pursuant to the NYSHRL and NYCHRL are subject to a three-year statute of limitations.[50]  Intentional tort claims, such as those for slander, libel, and defamation, are governed by a one-year statute of limitations.[51]  The statute of limitations for state claims is measured "from the date Plaintiff received notice of [Defendant's] allegedly adverse actions."[52]

Under New York's Civil Practice Law and Rules, equitable tolling for state law claims is permitted where "a person entitled to commence an action is

---

[49]     *Bolarinwa*, 593 F.3d at 232.  *Accord Raynor v. Dufrain*, 28 F. Supp. 2d 896, 900 n.7 (S.D.N.Y. 1998) (noting that the existence of "some impediment to filing during the statutory period" is insufficient to justify equitable tolling "if the petitioner still has many months remaining in which to file after removal of this impediment").

[50]     *See Whaley v. City Univ. of New York*, 555 F. Supp. 2d 381, 401 (S.D.N.Y. 2008) (noting the three-year statute of limitations period for claims brought pursuant to NYSHRL and NYCHRL (citing C.P.L.R 214(2) and New York City Admin. Code § 8-502(d))).

[51]     *See* C.P.L.R § 215(3); *Bridgers v. Wagner*, 80 A.D.3d 528, 528 (1st Dept. 2011).

[52]     *Pape*, 2009 WL 3151200, at *9.

14

under a disability because of infancy or insanity at the time the cause of action accrues."[53]  "[T]he toll for insanity is narrowly interpreted and extends only to those individuals who are unable to protect their legal rights because of an overall inability to function in society. The disability must be of such a nature that plaintiff is unable to manage his business affairs and is incapable of comprehending and protecting his legal rights and liabilities."[54]

"A plaintiff must also show that he or she was continuously insane throughout the entire statute of limitations period in question.  If a plaintiff has a lucid interval of significant duration, preceded and followed by a period of insanity, the toll is lost and is not resurrected when a plaintiff relapses into insanity."[55]

## C.    Breach of Contract

To make out a breach of contract claim under New York law, a plaintiff must show "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4)

---

[53]     C.P.L.R. § 208.

[54]     *Hedgepeth v. Runyon*, No. 96 Civ. 1161, 1997 WL 759438, at *4 (S.D.N.Y. Dec. 10, 1997) (quotation marks and citation omitted).

[55]     *Marshall v. Downey*, No. 09 Civ. 1764, 2010 WL 5464270, at *5-6 (E.D.N.Y. Dec. 27, 2010) (quotation marks and citation omitted).

damages."[56]  A breach of contract claim "that fails to allege facts sufficient to show

that an enforceable contract existed between the parties is subject to dismissal."[57]

However, a plaintiff alleging a breach of contract claim is required only to provide

defendants with a "short, plain notice" of the claims against them pursuant to Rule

8.[58]

### D.    Amendments to Pleadings

"Rule 15(a) provides that, other than amendments as a matter of

course, a party may amend the party's pleadings only by leave of court or by

written consent of the adverse party; and leave shall be freely given when justice so

requires."[59]  "[W]hether to permit a plaintiff to amend its pleadings is a matter

committed to the Court's sound discretion."[60]  However, the Supreme Court has

---

[56]     *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quotation marks omitted).

[57]     *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) (quotation marks omitted).

[58]     *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, No. 04 Civ. 2867, 2006 WL 6217754, at *19 (S.D.N.Y. Mar. 31, 2006) (citing *Weiss v. La Suisse*, 69 F. Supp. 2d 449, 462 (S.D.N.Y. 1999)).

[59]     *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (quotation marks and citation omitted).

[60]     *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (quotation marks and citation omitted).

explained that

> [i]f the underlying facts or circumstances relied upon by a plaintiff
> may be a proper subject of relief, he ought to be afforded an
> opportunity to test his claim on the merits.  In the absence of any
> apparent or declared reason – such as undue delay, bad faith or
> dilatory motive on the part of the movant, repeated failure to cure
> deficiencies by amendments previously allowed, undue prejudice
> to the opposing party by virtue of allowance of the amendment,
> futility of amendment, etc. – the leave sought should, as the rules
> require, be "freely given."[61]

Accordingly, "'[i]t is the usual practice upon granting a motion to dismiss to allow
leave to replead.'"[62]

## III.   DISCUSSION

Columbia contends that the majority of Apionishev's claims should be
dismissed because they are (1) time-barred, (2) fail to state a claim, or (3) violate
the statute of frauds.

### A.   Statute of Limitations

Columbia argues that the statute of limitations bars "(a) all
discrimination claims up to and including [Apionishev's] 2004 termination (Claims

---

[61]     *Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Rule 15(a)).
*Accord Jin v. Metropolitan Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002).

[62]     *Vacold LLC v. Cerami*, No. 00 Civ. 4024, 2002 WL 193157, at *6
(S.D.N.Y. Feb. 6, 2002) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d
42, 48 (2d Cir. 1991)).

1, 2, 3, 5 and 6); (b) those claims asserted under Title VII and ADA, based upon

any retaliatory negative recommendation letters given prior to July 21, 2006

(portions of Claims 9 and 10), and (c) all intentional tort claims based upon actions

allegedly taken earlier than July 21, 2008 (portions of Claims 9 and 10)."[63]

       Apionishev responds that, if these claims are time-barred, the statute

of limitations period should be equitably tolled "due to personal disability starting

April 19, 2006 or earlier and extraordinary circumstance in daily life associated

with health issues, homelessness and financial crisis."[64]   Specifically, Apionishev

contends that a period of homelessness, the suffering associated with his

---

[63]     Affidavit of Arthur M. Toback, counsel for Columbia, in Support of
Columbia's Motion for Judgment on the Pleadings ("Toback Aff.") at 2.  Columbia
asserts that Apionishev's retaliation claims are barred to the extent they are based
on events preceding July 21, 2006, and that his intentional torts claims are barred
to the extent they are based on events preceding July 21, 2008.  *See* Def. Mem. at
12. However, while Columbia's intentions are correct — *i.e.*, to provide a cut-off
date for these claims that is calculated three years and one year, respectively, from
the commencement of the action — its calculations are not.  Contrary to
Columbia's understanding and the July 21, 2009 filing date reflected on the
Court's electronic docket system, this action was commenced on July 6, 2009,
when Apionishev submitted his initial complaint directly to the Pro Se Office
pursuant to the local rules of this district.  *See Calzada v. Asture*, — F. Supp. 2d
—, No. 09 Civ. 3926, 2010 WL 4683570, at *29 n.5 (S.D.N.Y. Nov. 17, 2010)
("[T]he timeliness of pro se filings is measured based on the date of receipt by the
court's Pro Se Office." (citing *Toliver v. Sullivan County*, 841 F.2d 41, 42 (2d Cir.
1988)).

[64]     SAC at 1.

HIV/AIDS infection, and the debilitating side effects of his medications constitute extraordinary circumstances sufficient to toll the statute of limitations, because they caused "such a mental condition that [he] was not able to bring a law suit or a complaint."[65] To support his argument, Apionishev has submitted letters from two doctors and one health care specialist asserting, in varying language, that he was very ill and unable to pursue his legal rights during the period in question.[66]

---

[65]     *Id.* at 1-2.

[66]     *See, e.g.*, 10/5/10 Letter to the Court from Dr. Terry Farrow, HIV Specialist at the Callen Lorde Community Health Center ("Dr. Farrow Letter"), Ex. 5 to Plaintiff's Affirmation in Opposition to Defendant's Motion for Judgment on the Pleadings ("Pl. Opp.") (describing the physical, personal, and emotional side effects of Apionishev's HIV medications and noting that his "health issues and circumstances may have influenced his ability to pursue his civil rights until his condition approved"); 9/27/10 Letter to the Court from Dr. Anita Radix, HIV Specialist at the Callen Lorde Community Health Center ("Dr. Radix Letter"), Ex. 6 to Pl. Opp. (stating that plaintiff "could not work or perform his every day responsibilities" because of the adverse effects of his HIV medications, and that, "[b]ased on my observation of the patient's condition I strongly believe that Mr. Apionishev was very ill and left incapable to pursue his legal civil rights."); 9/27/10 Letter to the Court from Alexandra Remmel, Assistant Director of Client Advocacy at the Gay Men's Health Crisis ("Remmel Letter"), Ex. 7 to Pl. Opp. (describing plaintiff's deteriorating health, poverty, and inability to manage his every day affairs, and stating "I strongly believe that [Apionishev's] health crisis, homelessness and other struggles kept him from clear thinking, from functioning in the [sic] society for over two years, and from pursuit of his legal rights during that time despite his multiple attempts to do so.").   These submissions indicate that, at least as of April 2006, Apionishev was infected with HIV, HPV, CMV, SHV1, and SHV2; that he experienced symptoms in the form of chronic diarrhea, urinary frequency, condyloma accuminatum, an abnormal anal pap, fatigue, nausea, vomiting, insomnia, and anxiety; that side effects of his medications included "loss

### 1.  Federal Claims

Apionishev filed a charge with the EEOC on August 28, 2008, alleging that Columbia discriminated against him on the basis of his sexual orientation, disability, and national origin from the beginning of his employment in 1999 until his unlawful termination on September 30, 2004.  Apionishev subsequently amended the charge to include allegations of continuing discrimination in the form of derogatory reference letters sent by his former supervisor Dr. Kalderon after his 2004 termination.  Apionishev was required to file his charge within three hundred days of the alleged act of discrimination.[67]

---

of concentration or mental focus, and neuropathy;" and that he was ultimately diagnosed with dysthymic disorder and generalized anxiety.  Dr. Farrow Letter.
       These letters were attached to Apionishev's Opposition papers, and were written after the SAC was filed.  Accordingly, while the information they relay was known to Apionishev when he brought this action, the letters themselves may not be properly considered for purposes of this motion.  Nonetheless, I address them here to show that their inclusion in the SAC would not strengthen Apionishev's claims, and that granting him leave to file a third amended complaint would be futile.

[67]    I find no reference in the record indicating that Apionishev filed his charge with a state or local equal employment agency before filing his charge with the EEOC.  Under such circumstances, claimants must "file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment action." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 712 (2d Cir. 1996).  However, as Columbia asserts that the three hundred day period applies in this case, I will accept this as a stipulated fact. *See id.* at 713 n.1.  In any event, Apionishev's claims are time-barred under either statutory period.

Thus, any claims arising out of discrete discriminatory acts that took place before

November 2, 2007 are time-barred.[68]  This includes, in their entirety, Apionishev's

claims for: (1) discrimination based on national origin; (2) hostile work

environment and discrimination based on sexual orientation; (3) discrimination

based on disability; (5) unlawful termination based on disability, sexual orientation

and HIV-positive status; and (6) unlawful termination in retaliation.  Each of these

claims pertains to alleged discriminatory acts taken by Columbia University during

the course of Apionishev's employment and culminating in his termination on

September 30, 2004, well before the statutory cut-off date.[69]

---

[68]     These claims are also time-barred under the statute of limitations for
federal claims, which requires the commencement of a discrimination action within
three years of the alleged conduct.  Apionishev was terminated on September 30,
2004 but filed his complaint on July 21, 2009, almost five years later.  For this
reason, Apionishev's attempt to circumvent the EEOC filing requirement by
arguing that Columbia failed to post an EEOC notice on the floor where he worked
— and that his claims should therefore be equitably tolled because he was not
aware of his rights — is unavailing.  *See* SAC at 4; Pl. Opp. at 18.  In any event, a
"'plaintiff's claim that he had no knowledge of the EEOC because of [defendant's]
failure to post notices . . . [is not] sufficient to permit tolling.'" *Mazurkiewicz v.
New York City Health and Hospitals Corp.,* 356 Fed. Appx. 521, 522-23 (2d Cir.
2009) (quoting *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 111 (2d Cir.
1978)).

[69]     Apionishev argues that the continuing violation doctrine should
overcome the time bar on these claims, but the Supreme Court has explained that
"each discrete discriminatory act starts a new clock for filing charges alleging that
act." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U .S. 101, 113 (2002).  Moreover,
claims 1-3 and 4-5 are not made timely by any continuing retaliation following

21

Equitable tolling cannot overcome the time-bar on Apionishev's

federal claims because he has not demonstrated that some "extraordinary

circumstance stood in his way and prevented timely filing."[70] Homelessness and

depression or illness alone are not sufficient to justify equitable tolling,[71] and

Apionishev does not explain how these factors precluded the timely filing of his

claims.[72] Instead, his own evidence belies any argument that he was "incapable of

_____

Apionishev's termination, because "discrete discriminatory acts are not actionable
if time barred, even when they are related to acts alleged in timely filed charges."
*Id.*

[70]    *Bolarinwa*, 593 F.3d at 231.

[71]    *See, e.g., Mulkern v. N.Y. State Police*, No. 08 Civ. 8870, 2010 WL
5584598, at *11 (S.D.N.Y. Dec. 8, 2010) ("While there is no dispute that [plaintiff]
suffered from mental disabilities including PTSD, depression, anxiety, and
alcoholism, such mental disabilities alone do not suffice to establish his entitlement
to equitable tolling, and there is no evidence that these disabilities resulted in an
overall inability to function in society or rendered [plaintiff] unable to understand
or protect his legal rights."); *da Costa v. Union Local 306*, No. 08 Civ. 2470, 2009
WL 3076077, at *4 (S.D.N.Y. Sept. 25, 2009) (finding that plaintiff's
homelessness and physiological disorder did not constitute "extraordinary
circumstances" where plaintiff could nonetheless "assemble and submit extensive
papers . . . [and] pursue his legal rights within the period of limitations"); *Rhodes
v. Senkowski*, 82 F. Supp. 2d 160, 169 (S.D.N.Y. 2000) (holding that AIDS
infection resulting in extreme headaches, fever, hypertension, depression, weight
loss, fungal infections, and atypical chest discomfort did not toll the statute of
limitations).

[72]    *See Serrano*, 2009 WL 3698395, at *6 ("The party seeking to invoke
[equitable tolling] must 'demonstrate a causal relationship between the
extraordinary circumstances on which the claim for equitable tolling rests and the

22

comprehending and protecting his legal rights and liabilities" during the statutory

filing period.[73] For example, Apionishev's "health care specialist" indicated that

she "was personally assisting him with paper work in applying for public

assistance and housing . . . as he was unable to follow through on his own because

of illness and depression."[74] Such "assist[ance]" underscores that Apionishev was

---

lateness of his filing, a demonstration that cannot be made if the [plaintiff], acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances.'" (quoting *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001)). *See also Mulkern*, 2010 WL 5584598, at *2 ("At a minimum, a [plaintiff] must provide a particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights.") (quotation marks and citation omitted).

[73]     *Hedgepeth*, 1997 WL 759438, at *4. Although this language is derived from the state standard for equitable tolling, it is instructive for purposes of the federal statute of limitations inquiry as well. *See Mulkern*, 2010 WL 5584598, at *2 n.2 (applying the state statutory standard to plaintiff's ADA claim and noting that "cases in this district hold that in deciding whether a mental illness may be the basis for tolling in a federal civil rights action, 'a court may look to the relevant state law for guidance'" (quoting *Lloret v. Lockwood Greene Eng'rs, Inc.*, No. 97 Civ. 5750, 1998 WL 142326, at *2 (S.D.N.Y. Mar. 27, 1998) (considering ADEA and ADA claims under the state tolling standard)). *See also Tsai v. Rockefeller Univ.*, No. 00 Civ. 329, 2002 WL 237843, at *5 (S.D.N.Y. Feb. 15, 2002) ("Illness may constitute an exceptional circumstance for purposes of tolling only when it is so severe as to prevent the party from pursuing his or her legal rights.") (quotation marks and citation omitted).

[74]     Remmel Letter (self-identifying as a "health care specialist with sixteen years of experience working with HIV/AIDS patients" and explaining her interactions with Apionishev in her capacity as Assistant Director of Client Advocacy at the Gay Men's Health Crisis).

at least attempting — albeit with difficulty — to protect his rights.[75]  Moreover, as

defendant points out, during the time period sought to be tolled, Apionishev "held

himself out as a talented scientist seeking employment, held interviews for highly

competitive positions, communicated with professors and professionals in his

endeavors, and filed claims with the EEOC."[76]  Accordingly, Apionishev has not

shown that he was unable to pursue his rights for the entire statutory period so as to

warrant equitable tolling.[77]

---

[75]     See Tsai, 2002 WL 237843, at *5 ("[Federal] courts have repeatedly
refused to apply equitable tolling where a plaintiff has evidenced an ability to
pursue his or her legal rights during the relevant period.") (listing cases).  See also
Pauling v. Secretary of Dep't of Interior, 960 F. Supp. 793, 804 n.6
(S.D.N.Y.1997) (tolling not warranted on the basis of a "major depressive episode"
where the submitted medical evidence indicated only that plaintiff was too ill to
work, not that he was too ill to comprehend his rights and file a complaint, and
plaintiff was able to pursue worker's compensation claim during the same period).
Moreover, Apionishev's pursuit of public assistance demonstrates that he had the
ability to at least attempt to file a timely law suit — under the law of this circuit,
his failure to do so is another fatal blow to the application of equitable tolling.  See
Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) ("If the person seeking
equitable tolling has not exercised reasonable diligence in attempting to file after
the extraordinary circumstances began, the link of causation between the
extraordinary circumstances and the failure to file is broken, and the extraordinary
circumstances therefore did not prevent timely filing.").

[76]     Def. Mem. at 15-16.  Columbia's observations are corroborated by the
exhibits attached to the SAC, which are listed in the appendix to this Opinion.  Of
particular relevance are exhibits 4 and 5, discussed infra n. 77.

[77]     See Rhodes, 82 F. Supp. 2d at 169 (finding that tolling is not
warranted where plaintiff "has not presented any evidence to show that he was

## 2. State Law Claims

unable to pursue his legal rights during the periods within the one-year limitations period that he was not hospitalized"). Apionishev states that he "became extremely sick and was unable to bring up any litigation or a complaint" in July 2005. SAC at 5. However, that date is not supported by the evidence; exhibits attached to the Second Amended Complaint indicate that Apionishev was applying for a "scientist [level] position" as of early January 2006 and was interviewing for a lab position in early March 2006. 1/3/06 Dr. Kalderon's Recommendation Letter in Support of Apionishev ("Kalderon Recommendation Letter"), Ex. 4 to SAC ("Dr. Sergey Apionishev has asked me to write a letter of recommendation to support his application for a scientist le3vel [sic] position."). *Accord* 3/06 Email Exchange Between Apionishev and Prospective Employer, Ex. 5 to SAC (discussing travel arrangements to an interview for a research position, as well as the outcome of the interview).

Apionishev also lists April 19, 2006 as the date he became "legally disabled," which appears to be based on a determination by the Social Security Administration Office of Disability Adjudication and Review ("SSAO") that "the claimant has been disabled" since that date for purposes of certain Social Security Act provisions. 12/6/07 SSAO Letter, Ex. 1 to SAC. Accepting, *arguendo*, that Apionishev was unable to file a claim as of April 19, 2006, this does not explain why he was unable to file a claim in the year and a half prior to that date, considering the discrimination claims accrued, at the latest, on September 30, 2004 (the date of Apionishev's termination). Moreover, Apionishev submitted as evidence an email exchange from November 30, 2007, which shows that he was not incapacitated as of that date. *See* 11/30/07 Email Exchange Between Apionishev and Dr. Kalderon ("Kalderon Email Exchange"), Ex. 6 to SAC. Indeed, Apionishev's email states that despite his efforts, "for several years and months now I am still unable to get any job in science." *Id.* Thus, viewing the evidence in the light most favorable to Apionishev, he may have, at most, been unable to pursue his rights from April 19, 2006 until November 30, 2007. *See* 1/09 Recommendation Letters From Various Scientists in Support of Apionishev, Ex. 8 to SAC. Once again, Apionishev submitted evidence with his opposition papers that may not be considered for purposes of this motion, but which would, in any event, strengthen *Columbia's* argument that equitable tolling is *not* warranted. *See* Communications From Various Prospective Employers, Ex. 12 to Pl. Opp. (presenting communications pertaining to Apionishev's job search in March 2006, March 2008, and June 2008).

Apionishev's state law claims are also, in large part, barred. Claims 9 (intentional retaliation by means of libel, defamation, and slander) and 10 (intentional slander, libel, and retaliation) assert retaliation and intentional torts claims on the basis of allegedly negative letters of recommendation sent by Apionishev's former supervisor after his termination on September 30, 2004 and continuing until the filing of the instant action on July 6, 2009.[78] Because Apionishev commenced his suit on July 6, 2009, he can only bring claims for offending retaliatory activity occurring on or after July 7, 2006 and for intentional torts committed on or after July 6, 2008.[79]

---

[78]    *See* SAC at 12-13 ("Dr. Kalderon, while acting within the scope of his responsibilities, repeatedly retaliated against me by repeatedly providing negative derogatory letters of recommendations to my potential employers in years 2006, 2007, 2008 and 2009, . . . slandering my name on the phone with potential employers, and sending additional e-mails to my potential employers urging them not to hire me . . . because I complained to Affirmative Action Office and to University Officials [about his discriminatory conduct towards me].").

[79]    As with Apionishev's federal discrimination claims, the continuing violation exception cannot preserve the portions of claims 9 and 10 alleging discrimination under state law. The conduct upon which these claims are predicated — the sending of allegedly improper recommendation letters — involves a series of discrete acts that must each, individually, comply with the relevant statutory timing provisions. *See supra* n. 68. While a continuing violation may be found "where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice," Apionishev fails to allege a connection between his former supervisor's treatment of him and any practice or policy by Columbia. *See Van Zant*, 80 F.3d at 713. Indeed, the record indicates that Columbia promptly

Equitable tolling provisions cannot offer Apionishev any relief for his time-barred state law claims, because he was neither insane at the time the cause of action accrued nor throughout the entire statute of limitations period in question. Cases in which tolling has been approved have generally involved an unmistakable inability to function in society.[80]  As discussed earlier, however, Apionishev was able to seek post-doctorate employment and pursue public assistance during the statutory period, thereby evincing at least a basic ability to maintain his affairs. Indeed, claims 9 and 10 arise out from Apionishev's request for recommendation letters, the content of which he blames for his inability to secure suitable scientific employment *notwithstanding his repeated efforts to do so.*  Moreover, the

---

responded to Apionishev's formal grievances, and determined them to be without merit after a formal investigation.

[80]    *See Swartz v. Berkshire Life Ins. Co.*, No. 99 Civ. 9462, 2000 WL 1448627, at *5 (S.D.N.Y. Sept. 28, 2000) ("Difficulty in functioning is not sufficient to establish insanity for the purposes of [C.P.L.R. § 208]; rather, the plaintiff must be totally unable to function as a result of a severe and incapacitating disability.").  *See, e.g., Ferreira v. Maimonides Med. Ctr.*, 43 A.D.3d 856, 857 (2d Dept. 2007) (plaintiff was "unresponsive," "in need of breathing and feeding support," and "did not move from his bed unless carried"); *Carrasquillo v. Holliswood Hosp.*, 37 A.D.3d 509, 510 (2d Dept. 2007) (plaintiff suffered from "brain injuries, which . . . resulted in her requiring long-term care and the appointment of a guardian ad litem"); *Schulman v. Jacobowitz*, 19 A.D.3d 574, 576 (2d Dept. 2005) (plaintiff suffered stroke, was hospitalized and in nursing home, "opened his eyes to stimuli but could follow no commands," and could not communicate "his wants, needs, and feelings").

documents Apionishev submitted with his SAC evidence his ability to recognize and assert his rights during the statutory period.[81]

Thus, despite the Court's sympathy for Apionishev's difficult circumstances, equitable tolling is not justified for either his state or federal claims.[82] Claims 1, 2, 3, 5, 6, and parts of claims 9 and 10 are thus dismissed on timeliness grounds.

### B. Respondeat Superior

Columbia asserts that any remaining state and city discrimination claims must be dismissed because they pertain only to the reference letters provided by Dr. Kalderon, for which Columbia cannot be held liable. As defendant points out, the doctrine of respondeat superior is not available in discrimination claims brought under New York state law. "Under § 296 of the NYSHRL and § 8-107 of the NYCHRL an employer cannot be held liable . . . for

---

[81]    *See, e.g.*, Kalderon Email Exchange (asking Dr. Kalderon to revise the allegedly negative letter because it was preventing him from finding employment and contained inaccuracies).

[82]    *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (per curiam) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants."). *See also Serrano*, 2009 WL 3698395, at *5 ("*Pro se* plaintiffs, although held to more lenient standards, are not excused from establishing [the requisite extraordinary circumstances to warrant equitable tolling].")

28

an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it."[83]

As Columbia points out, "there is no factual pleading demonstrating that Columbia actively encouraged, approved, or condoned any improper letters sent by Dr. Kalderon to prospective employers of Plaintiff."[84] Nonetheless, in his opposition papers, Apionishev argues that Columbia encouraged, condoned, or approved Dr. Kalderon's conduct by "issuing [a] letter . . . approv[ing] all actions by Dr. Kalderon" in response to his complaints of harassment and discrimination with the Assistant and Vice Provosts of the school.[85] As evidence of Columbia's "approval," Apionishev provides the following excerpts from the letter: (1) "Professor Kalderon, as your principal investigator, determines your salary and the conditions of your employment"; (2) "Professor Kalderon can determine the vacation periods for people working in his lab since vacations need to be scheduled in a way that will not impede the research being done."; and (3) "Professor

---

[83] *Heskin v. Insite Advertising, Inc.,* No. 03 Civ. 2598, 2005 WL 407646, at *23 (S.D.N.Y. Feb. 22, 2005) (quotation marks and citations omitted).

[84] Def. Mem. at 17.

[85] Pl. Opp. at 20. *Accord* 4/21/04 Letter from Pearl Spiro ("Spiro Letter"), Assistant Provost at Columbia, Ex. 3 to SAC.

Kalderon can use the money in his grants as he thinks best."[86]  Neither these nor

any other portions of the letter indicate any kind of endorsement or participation in

Dr. Kalderon's *provision of recommendation letters or references following*

*Apionishev's termination in September 2004*, which is the only aspect of

Apionishev's discrimination and retaliation claims that is not time-barred.  The

letter appears to address "concerns [Apionishev] raised during [his] conversation

[with Assistant Provost Pearl Spiro] on *April 14, 2004*."[87]  Because Apionishev has

not provided any basis for Columbia's liability in connection with Dr. Kalderon's

conduct, any remaining state law discrimination and retaliation claims — *i.e.*,

portions of claims 9 and 10 — must be dismissed.[88]

---

[86]    Pl. Opp. at 20-21 (quoting from Spiro Letter).  For context, I note that the paragraph containing the allegedly offending provisions begins with the following: "Principal investigators at the University [such as Dr. Kalderon] have full administrative, fiscal, and scientific responsibility for the management of their sponsored projects."  Spiro Letter.

[87]    Spiro Letter (emphasis added).

[88]    Claim 12 (ongoing retaliation) also relates to the references Dr. Kalderon provided to Apionishev after his termination.  Specifically, Apionishev alleges that Dr. Kalderon provided a negative reference to a prospective employer on or around July 2009.  *See* SAC at 18.  While it is unclear from the pleadings whether this claim is brought under federal and/or state law, I construe Apionishev's pleadings liberally and assume that federal law applies in order to preserve his claim.  *See Memnon v. Clifford Chance US, LLP*, 667 F. Supp. 2d 334, 342-43 (S.D.N.Y. 2009) ("There is substantial support in the case law of this Circuit that a former employer's spreading of negative information or references to

30

### C.    Breach of Contract[89]

In support of claim 11 (breach of contract), Apionishev alleges that

Dr. Kalderon "agreed and promised (in writing when he primarily agreed to mail

out letter of recommendation) to provide my potential employers with a positive

Letter of Recommendation whenever I request such a letter of support, but instead,

Dr. Kalderon breached this contract."[90]   Specifically, in his opposition papers,

Apionishev claims that a November 30, 2007 email from Dr. Kalderon constitutes

this agreement and is "the most recent identifiable written contract between [him]

and Columbia University."[91]

---

a prospective employer is sufficient to constitute an adverse employment action in
the [Title VII] retaliation context.").   Columbia does not move to dismiss claim 12,
and to the extent that the claim encompasses conduct within the statute of
limitations, it may proceed.   *See* Defendant's Reply Memorandum of Law in
Further Support of Its Motion for Judgment on the Pleadings at 3 ("The only claim
that Columbia is not seeking to dismiss is that limited to allegations of
discriminatory, retaliatory references sent within three years of the filing of [the]
Complaint.").

[89]    Because New York law provides for a six-year statute of limitations
on actions arising from breach of contract, this claim is timely.   *See* C.P.L.R. §
213(2).

[90]    SAC at 15.

[91]    Kalderon Email Exchange.   Although Apionishev attached the email
to the SAC as one of ten exhibits, he only identified it as the basis of his contract in
his opposition papers.   Columbia thus argues that dismissal is warranted because it
was deprived of fair notice of Apionishev's claim.   *See* Def. Mem. at 19 ("[The

The November 30, 2007 email was a response to Apionishev's request

that Dr. Kalderon revise any recommendation letters sent on his behalf to omit any

allegedly negative statements.  In particular, Apionishev took issue with Dr.

Kalderon's assertion that "[i]t would . . . be fair to say that Sergey and I did not

have the ideal relationship."[92]  In response to Apionishev's request that he remove

---

SAC does not] attach or [identify] any supposed written contract between
Columbia and Plaintiff to supply positive letters of recommendation for an
indefinite period of time, or even to identify an oral contract specifying all of the
attributes of a contract." (citing, *inter alia*, *Leepson v. The Allen Riley Co.*,  No. 04
Civ. 3720, 2006 WL 2135806, at *3 (S.D.N.Y. July 31, 2006) ("[T]he breach of
contract allegations in the complaint must include the provisions of the contract
upon which the claim is based."); *Chrysler Capital Corp. v. Hilltop Egg Farms,
Inc.*, 129 A.D.2d 927, 928 (3d Dept. 1987) ("In an action to recover damages for
breach of contract, the complaint must, *inter alia*, set forth the terms of the
agreement upon which liability is predicated, either by express reference or by
attaching a copy of the contract.")).

Given Apionishev's *pro se* status, his failure to identify the basis of his
breach of contract claim in the SAC does not automatically warrant its dismissal.
However, that Apionishev  contradicts the existence of a written agreement in his
SAC is fatal to his claim. *See* SAC at 15 ("Dr. Kalderon did not have to agree to
give me any letters and could simply refuse my request for a letter of
recommendation.  But Dr. Kalderon has chosen to write the letter and decided [to]
intentionally damage my career . . . .").  To the extent that Apionishev alleges that
the breached contract was oral and not in writing, the contract violates the New
York Statute of Frauds and is unenforceable because it was not required to be
performed within one year. *See* N.Y. Gen. Oblig. Law § 5-701(a)(1) ("Every
agreement, promise or undertaking is void, unless it or some note or memorandum
thereof be in writing, . . . if such agreement . . . by its terms is not to be performed
within one year from the making thereof.).

[92]     Kalderon Recommendation Letter. *Accord* Kalderon Email Exchange
("Honestly, I do not think our relationship was bad at all, why would you even say

the reference to their relationship, Dr. Kalderon explained the reasons for its inclusion but agreed to omit it if Apionishev "assure[d] [Dr. Kalderon] that [he] will try to have a relationship with a future employer that is significantly better than the one [Apionishev] had with [him] (by [Apionishev's] own perceptions)."[93]

Apionishev asserts that a contract was created because "Dr. Kalderon . . . promis[ed] to eliminate offensive sentence he wrote previously in the letters, therefore, to provide positive letters . . . He offered to delete offensive sentence from the Letter under a certain condition and I accepted his offer."[94]  Nothing in the email, however, evidences the existence of a contract between Dr. Kalderon and Apionishev, let alone Apionishev and Columbia.  Even assuming that Dr. Kalderon could bind Columbia to a contract and that he  made a specific offer to write Apionishev positive recommendation letters, which Apionishev accepted, there was no assent or consideration.  The email itself is ambiguous about whether Dr. Kalderon would remove the offending sentence, and does not obligate the

_____

so in a letter of recommendation for anybody anyway? So please. . . [sic] if you have a chance, please think about it.  Revise the letter, it will make you feel better about yourself as a person . . . .").

[93]    Kalderon Email Exchange.  Apionishev either did not respond to Dr. Kalderon's email, or did not include his response in his submissions to the Court.

[94]    Pl. Opp. at 23.

parties to any specific conduct.[95]  Nor did Dr. Kalderon or Columbia receive any

kind of benefit from providing references for a terminated employee.[96]

Accordingly, Claim 11 must be dismissed in its entirety for failure to state a claim

for relief.[97]

### D.    Leave to Amend

Because the vast majority of Apionishev's claims are barred under the

statute of limitations, amendment to his complaint would be futile — especially in

light of the fact that Apionishev has already had two opportunities to amend his

---

[95]      *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 (2d Cir. 2009)
(emphasis omitted) (citing *Maffea v. Ippolito*, 247 A.D.2d 366, 367 (2d Dept.
1998) ("[T]he manifestation or expression of assent necessary to form a contract
may be by word, act, or conduct which evinces the intention of the parties to
contract."). "A party's conduct indicates assent when 'he intends to engage in the
conduct and knows or has reason to know that the other party may infer from his
conduct that he assents.'"  *Id.* (quoting Restatement (Second) of Contracts § 19(2)
(1981)).

[96]      Apionishev asserts that Columbia received consideration in the form
of his knowledge, skills, labor, and research. *See* Pl. Opp. at 24.  Even assuming
that these factors could constitute adequate consideration to form a binding
contract, they were no longer in effect after Apionishev's termination.

[97]      Apionishev also states that Dr. Kalderon "broke/breached the
promise/contract concerning place [sic] my Authorship in the research paper
[published in a scientific journal]." SAC at 17.  Because Apionishev does not
make any allegations of offer, acceptance, assent or consideration related to the use
of his name on the research paper, he does not state a tenable breach of contract
claim on this ground.

pleadings and demonstrate that he has cognizable claims. Accordingly, Apionishev's motion to file a third amended complaint is denied.

## V.    CONCLUSION

For the foregoing reasons, defendant's motion for judgment on the pleadings is granted in its entirety.[98] The Clerk of the Court is directed to close this motion [Docket No. 25], as well as plaintiff's motion for leave to file a third amended complaint [Docket No. 35]. A conference is scheduled for March 31, 2011 at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           March 25, 2011

---

[98]    The only claims remaining in this action are claim 12 and those portions of claims 9 and 10 that are not time-barred, all of which pertain to the sending of improper references.

35

## - APPENDIX -

The following list presents all of the exhibits submitted with Apionishev's Second Amended Complaint, upon which I relied for purposes of this motion:

(1)  12/6/07 Notice of Disability Decision from the Social Security Administration

(2)  11/20/08 Excerpt of Columbia's Response to the EEOC Charge

(3)  4/21/04 Letter from Pearl Spiro, Assistant Provost at Columbia, to Apionishev

(4)  1/3/06 Dr. Kalderon's Recommendation Letter in Support of Apionishev

(5)  3/06 Email Exchange Between Apionishev and Prospective Employer,

(6)  11/30/07 Email Exchange Between Apionishev and Dr. Kalderon

(7)  12/09 Affidavits Regarding EEOC Postings at Columbia

(8)  1/09 Recommendation Letters From Various Scientists in Support of Apionishev

(9)  Undated and Unattributed Excerpt Referencing a Negative Recommendation Letter that Deterred a Potential Employer from Hiring Apionishev

(10)  4/17/09 EEOC Right to Sue Letter

- Appearances -

**Plaintiff (Pro Se):**

Sergey Apionishev
320 Empire Boulevard
Apt. 6E
Brooklyn, NY 11225

**For Defendant:**

Arthur Malcolm Toback, Esq.
Toback, Hyman, Bernstein & Reiss, LLP
500 Fifth Avenue, Suite 1640
New York, NY 10110
(212) 869-2300