UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

SERGEY APIONISHEV,

               Plaintiff,

    - against -

COLUMBIA UNIVERSITY IN THE CITY
OF NEW YORK,

              Defendant.

------------------------------------------------------X

**OPINION AND ORDER**

**09 Civ. 6471 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/23/12

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

Dr. Sergey Apionishev, proceeding pro se, has sued Columbia University in the City of New York[1] alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Americans with Disabilities Act of 1990 ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"). Plaintiff's allegations are premised

---

[1]    There is no legal entity known as "Columbia University in the City of New York." The proper legal entity is "The Trustees of Columbia University in the City of New York" (hereafter "Columbia," the "University," or "Columbia University"). In the interests of justice and because plaintiff is proceeding pro se, I will liberally interpret his pleadings and substitute The Trustees of Columbia University in the City of New York as the named defendant in place of Columbia University in the City of New York. *See Androbus v. Department of Corr.*, No. 07 Civ. 2076, 2009 WL 773277, at *3 (S.D.N.Y. Mar. 24, 2009) (constructively amending plaintiff's complaint to add the City of New York as a defendant where plaintiff originally sued the Department of Corrections, a non-suable entity).

on the termination of his employment as a laboratory research scientist by Columbia on September 30, 2004, and four allegedly negative letters of reference sent by his former supervisor, Dr. Daniel D. Kalderon, to prospective employers. Columbia has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  For the following reasons, Columbia's motion for summary judgment is granted in its entirety and this case is dismissed.

## II.    FACTS

### A.    Prior Proceedings

Apionishev filed a charge with the Equal Employment Opportunity Commission ("EEOC") on August 28, 2008, and received a right-to-sue letter on April 19, 2009.  Apionishev filed the instant action on July 6, 2009, asserting claims under Title VII, the ADA, the NYSHRL, and the NYCHRL.  Apionishev alleged that he was discriminated against based on his disability (HIV+ status) and national origin (Russian), that Columbia failed to accommodate his disability, and that he was the victim of retaliation.  On November 20, 2009, Apionishev filed an Amended Complaint and, on May 19, 2010, he filed a Second Amended Complaint ("SAC").[2]

---

[2]      After the Court disallowed several proposed claims (Claims 4, 7, 8 and 12), Apionishev asserted the following claims in the SAC:  (1) Discrimination Based on National Origin; (2) Hostile Work Environment/Discrimination Based on Sexual Orientation; (3) Discrimination Based on Disability; (5) Unlawful

Columbia moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), seeking to dismiss most of plaintiff's claims. On March 25, 2011, this Court issued an Opinion and Order granting Columbia's motion for judgment on the pleadings in its entirety.[3] In that motion, however, Columbia did not seek dismissal of: (1) any claims of retaliation asserted under Title VII and the ADA for improper reference letters circulated by Dr. Kalderon within three years of the filing of the initial Complaint; and (2) any claims of intentional tort for improper references circulated by Dr. Kalderon within one year of the filing of the initial Complaint.[4] In addition, plaintiff's motion to file a third amended complaint was denied on the ground of futility.[5]

---

Termination Based on Disability, Sexual Orientation, and HIV+ Status; (6) Unlawful Termination in Retaliation; (9) Intentional Retaliation By Means of Libel, Defamation, and Slandering; (10) Intentional Slander/Libel/Retaliation; (11) Breach of Contract; and (12) Intentional Retaliation Is Still Ongoing. The SAC omits Claims 4, 7, and 8 and renumbered Claim 13 as Claim 12.

[3]    *See Apionishev v. Columbia University*, No. 09 Civ. 6471, 2011 WL 1197637 (S.D.N.Y. Mar. 25, 2011).

[4]    *See id.* at *1, n.1.

[5]    *See id.* at *8 ("Because the vast majority of Apionishev's claims are barred under the statute of limitations, amendment to his complaint would be futile – especially in light of the fact that Apionishev has already had two opportunities to amend his pleadings and demonstrate that he has cognizable claims.").

Two subsequent actions brought by plaintiff and consolidated with the instant, lead action – *Apionishev v. Department of Biological Sciences of Columbia University*, 10 Civ. 7742 (SAS), filed on October 5, 2010, and *Apionishev v. The Trustees of Columbia University*, 10 Civ. 9287 (SAS), filed on December 8, 2010 – were dismissed for reasons stated on the record at a conference held on June 7, 2011. At that conference, this Court addressed the claim brought by plaintiff pursuant to Title IX of the Education Amendments of 1972[6] ("Title IX") as follows:

> Plaintiff's Title IX claim is subject to the three-year statute of limitations applicable to personal injury actions. . . . Thus, except for alleged retaliatory letters of reference sent within three years of plaintiff's October 5, 2010 filing in this action, plaintiff's Title IX claim must be dismissed. However, in the lead action, Columbia University did not seek to dismiss any claims asserted under Title VII and the ADA for reference letters sent within the three-year period preceding the filing of that lawsuit. . . . Rather than have two parallel actions in which plaintiff's claim regarding the alleged retaliatory reference letters will be litigated, I will permit plaintiff to assert any timely claims under Title IX in the lead case, 09 Civ. 6471. Accordingly, plaintiff's Title IX claim in this action is dismissed in its entirety.
>
> * * *
>
> In sum, in the lead case 09 Civ. 6471, plaintiff will be permitted to litigate, under Title IX, those letters of reference sent within the three-year period preceding

---

[6]     20 U.S.C. § 1681 *et seq.*

4

October 5, 2010.  Plaintiff will also be permitted to litigate under Title VII, the ADA, and New York common law for intentional torts, those letters of reference sent within the three-year period preceding July 6, 2009, the date the initial complaint was filed in the lead case.[7]

In granting Columbia's motion for judgment on the pleadings in the lead action, this Court noted that the doctrine of *respondeat superior* is not available for discrimination and retaliation claims brought under New York state law.[8]  This Court dismissed plaintiff's discrimination and retaliation claims under the NYSHRL.[9]  However, the NYCHRL applies vicarious liability principles so as to permit a retaliation claim against an employer in certain instances.[10]

---

[7]      Transcript of June 7, 2011 Conference at 9, 11.

[8]      *See Apionishev*, 2011 WL 1197637, at *7 ("Because Apionishev has not provided any basis for Columbia's liability in connection with Dr. Kalderon's conduct, any remaining state law discrimination and retaliation claims – *i.e.*, portions of claims 9 and 10 – must be dismissed.").

[9]      *See id.* ("Because Apionishev has not provided any basis for Columbia's liability in connection with Dr. Kalderon's conduct, any remaining state law discrimination and retaliation claims . . . must be dismissed.").

[10]      *See Zakrzewska v New School*, 14 N.Y.3d 469, 479-80 (2010) ("[T]he NYCHRL imposes liability on the employer in three instances: (1) where the offending employee 'exercised managerial or supervisory responsibility' . . .; (2) where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take 'immediate and appropriate corrective action'; and (3) where the employer 'should have known' of the offending employee's unlawful discriminatory conduct yet 'failed to exercise reasonable diligence to prevent [it].'"  (quoting Administrative Code of City of N.Y. § 8-107 [13](b)(1)-(3), alteration in original).  Here, the first clause could arguably impose

5

Accordingly, I now must address plaintiff's retaliation claim under the NYCHRL based upon Dr. Kalderon's allegedly improper letters of reference. Thus, the only claims that survived the motion for judgment on the pleadings include Claim 12 (Retaliation under Title VII, the ADA, Title IX, and the NYCHRL) and those portions of Claims 9 and 10 (Intentional Tort under New York common law) that are not time-barred.[11] Plaintiff's retaliation claims under Title VII, the ADA, and the NYCHRL are limited to the three-year period preceding July 6, 2009, while his retaliation claim under Title IX is limited to the three-year period preceding October 5, 2010. Plaintiff's intentional tort claims, consisting of defamation claims for libel and slander, are governed by a one-year statute of limitations,[12] which limits plaintiff's claims to the one-year period preceding July 6, 2009. Finally, at a conference held on August 9, 2011, I allowed plaintiff to incorporate allegations of retaliation relating to a letter sent to Apionishev from Arthur Toback, counsel to Columbia, dated March 2, 2011 (the "March 2, 2011 Letter" or

---

strict liability on Columbia for the acts of Dr. Kalderon, who was Apionishev's supervisor.

[11]    *See Apionishev*, 2011 WL 1197637, at *8 n.98.

[12]    *See* New York Civil Practice Law and Rules ("CPLR") § 215(3).

the "Letter")[13] and a subsequent email dated March 2, 2011 (the "March 2, 2011

Email" or the "Email"),[14] sent by Dr. Kalderon to Toback, and inadvertently

disclosed to Apionishev, commenting on the Letter. Rather than permit plaintiff to

file a Third Amended Complaint, his new allegations of discriminatory retaliation

were deemed incorporated into the Second Amended Complaint.[15]

### B.    Factual Background

Apionishev worked at Columbia University from October 1, 1999

until September 30, 2004, as a PhD laboratory research scientist in a research

program supervised by Dr. Daniel Kalderon.[16]   In April 2004, plaintiff complained

to the University about his salary and conditions of employment.[17]   Plaintiff also

complained of harassment and discrimination to the University's Provost.  By

letter dated April 21, 2004, Columbia's Assistant Provost informed plaintiff that

---

[13]    *See* Ex. F to the Affidavit of Arthur M. Toback in Support of Motion for Summary Judgment ("Toback Aff.").

[14]    *See* Ex. H to the Toback Aff.

[15]    *See* Transcript of August 9, 2011 Conference at 5 ("I will order that those allegations are incorporated into the current complaint.").

[16]    *See* Statement of Undisputed Facts ("Def. 56.1") ¶ 1; Affidavit of Daniel Kalderon in Support of Motion for Summary Judgment ("Kalderon Aff.") ¶ 1.

[17]    *See* Def. 56.1 ¶ 2.

the University believed that he had, in fact, been treated properly.[18]  Plaintiff was

terminated on September 30, 2004.  The instant action was commenced by the

filing of a Summons and Complaint on July 6, 2009.[19]  The Complaint followed a

written Charge of Discrimination filed with the United States Equal Employment

Opportunity Commission ("EEOC") on August 28, 2008, as amended on

September 29, 2008.[20]  Notice of plaintiff's Charge was sent to Columbia by the

EEOC on October 28, 2008.[21]

### 1.    Letters of Reference

After Apionishev left Columbia, he asked Dr. Kalderon to send letters

of reference to certain prospective employers.[22]  For example, on January 3, 2006,

Dr. Kalderon wrote to Henderson Jones of Regeneron Pharmaceuticals.[23]  In that

letter, Dr. Kalderon concluded with the following language:

---

[18]    *See* Ex. 3 to the SAC (stating, *inter alia*, that Dr. Kalderon abided by University salary guidelines in setting Apionishev's salary which was "well above the minimum set by the Provost for an Associate Research Scientist").

[19]    *See* Def. 56.1 ¶ 4.

[20]    *See id.* ¶ 5.

[21]    *See id.*

[22]    *See* Kalderon Aff. ¶ 2.

[23]    *See id.* ¶ 3 & Ex. A.

> I think the above paragraph summarizes the bare facts.  If you have specific questions please feel free to contact me. For what it's worth, <u>I have a suspicion that Sergey might function best in a fairly rigid environment</u> where precise expectations are clear and can be met or addressed on a regular basis.  It would also be fair <u>to say that Sergey and I did not have the ideal relationship</u>.[24]

The above language – referring to a "fairly rigid environment" and a less than "ideal relationship" – was typical of the initial reference letters drafted by Dr. Kalderon and sent to plaintiff's prospective employers.[25]  Also typical was the following language concerning Dr. Kalderon's belief about the "norms of productivity" in Apionishev's area of research:

> I am not certain if you are aware of the norms for productivity in Drosophila research.  It is common for a single successful project to take about two years to complete once you have established a clear entry-point of interest.  In my lab both students and post-docs have typically taken about 3-4 yrs before publishing anything & then produced a second (usually the best) paper in another year or so.  While I would love to be more productive I give you this as the most relevant frame of reference.[26]

---

[24]   Ex. A to the Kalderon Aff. at 2 (underline in original).

[25]   *See* Def. 56.1 ¶ 11 ("Prior to July 7, 2006, reference letters prepared by Dr. Kalderon and sent to potential employers of Plaintiff stated that Dr. Kalderon did not believe that he and Dr. Apionishev had an ideal relationship and stated that Dr. Apionishev works best in a fairly rigid environment.") (quotation marks and citations omitted).

[26]   Ex. A to the Kalderon Aff. at 1-2.

In an email dated November 30, 2007, Apionishev requested that Dr. Kalderon revise future letters of reference by deleting the two sentences concerning the "fairly rigid environment" and the less than "ideal relationship."[27] Apionishev accompanied his email request with a copy of the Henderson Jones reference letter with the two sentences underlined, as shown above.[28]  Apionishev did not underline any other sentences in the Henderson Jones reference letter, nor did he request any other changes to the form of future letters of reference.[29]

During the course of this litigation, Columbia identified four letters of reference sent by Dr. Kalderon that fell within the applicable limitations periods (the "Letters of Reference"): a second letter to Henderson Jones dated January 17, 2008 (erroneously dated January 17, 2007); a letter dated February 15, 2008, to Dr. Lucy Williams of the University of Puerto Rico; a letter dated May 21, 2008, to Dr. Feske of Mt. Sinai Medical Center; and a letter dated July 22, 2009, to Dr. Andreas Jenny of Yeshiva University's Albert Einstein College of Medicine.[30]  These four letters were the only letters of reference sent by Dr. Kalderon on Apionishev's

---

[27]    Def. 56.1 ¶ 12.

[28]    *See id.* ¶ 13.

[29]    *See id.*

[30]    *See id.* ¶ 9.

behalf on or after July 7, 2006.[31]   In these letters, Dr. Kalderon removed the two

sentences previously identified.[32]   Consequently, none of the four Letters of

Reference include the less than "ideal relationship" and the "rigid environment"

language found in Dr. Kalderon's previous reference letters.[33]   Because of this

omission, all four letters conclude with similar paragraphs describing the "norms

of productivity" for Drosophila research, all of which are nearly identical to the

norms of productivity paragraph quoted above.[34]

          At his deposition, plaintiff admitted that he did not complain about the

"norms of productivity" paragraph in the November 2007 email he sent to Dr.

Kalderon.[35]   Nonetheless, plaintiff now objects to the "norms of productivity"

---

[31]     *See id.* ¶ 10.

[32]     *See id.* ¶ 14.

[33]     *See* Kalderon Aff. ¶ 7.

[34]     *See* Ex. C to the Kalderon Aff. All four letters contain the following
modification: the words "(ending up as one paper)" are inserted after "single
successful project" in parentheses.  The 7/22/09 Letter to Dr. Jenny also contains
the following modifications: the words "I am not certain if you are aware of the
norms for productivity in Drosophila research." were omitted; the last paragraph
begins with "I believe that in this type of Drosophila research it is common for a
single successful project (ending up as one paper) to take about two years . . . ."

[35]     *See* 7/7/11 Deposition Transcript of Sergey Apionishev, Ex. E to the
Toback Aff. ("Apionishev Dep.") at 25 (where plaintiff conceded that he did not
underline the norms of productivity language in his 11/30/07 email to Dr. Kalderon
and that he did not otherwise complain about such language to Dr. Kalderon).  *See
also* Ex. 14 to the Affidavit in Support of Plaintiff's Opposition to Defendant's

paragraph contained in each of the Letters of Reference.[36]  Plaintiff  admitted,

however, that there was nothing libelous in Dr. Kalderon's July 22, 2009 letter of

reference to Dr. Jenny, a letter which contains a norms of productivity paragraph

substantially similar to those included in the other three Letters of Reference.[37]

Dr. Kalderon included the "norms of productivity" paragraph in the

four Letters of Reference "to allow the recipient to judge Dr. Apionishev's

productivity relative to others in the same field of research."[38]  According to Dr.

Kalderon, such language was not intended to be a criticism of Apionishev's work.[39]

Rather, it was intended to show that Apionishev's work fell within the average

range of productivity within this field.[40]

---

Reply Memorandum & Motion for Summary Judgment (in his 1/15/08 email to Dr.
Kalderon, plaintiff requested that the "ideal relationship" and "rigid environment"
language be deleted from future letters).

[36]     *See* Apionishev Dep. at 27 (confirming that plaintiff's only objection
is to the sentences relating to the norms for productivity in Drosophila research).

[37]     *See* Def. 56.1 ¶ 21.  *See also* Apionishev Dep. at 11 ("Q.  I ask you to
read to yourself the letter of reference from Dr. Kalderon to Dr. Jenny dated July
22nd, 2009 and ask if there's anything in this letter which is libelous?  A.  No.").

[38]     Kalderon Aff. ¶ 9.

[39]     *See id.*

[40]     *See id.* (stating that the norms of productivity paragraph "was
intended to dispel any reservations the recipient may have over Dr. Apionishev's
productivity based on a different and inappropriate frame of reference").

Plaintiff does not have any statements from any prospective employers explaining why they did not offer him employment.  In fact, plaintiff has no other letters of reference or any other evidence of any statements made by Dr. Kalderon, or anyone else at Columbia, during the relevant time periods that could support his retaliation and/or defamation claims.[41]  Thus, the only evidence of any alleged retaliation consists solely of the four Letters of Reference.

### 2.    March 2, 2011 Letter and Email

Plaintiff claims that the March 2, 2011 Letter is evidence of discriminatory retaliation.  The body of the Letter, which Toback sent by email to Apionishev, Dr. Kalderon, and Columbia's General Counsel's Office, states as follows:

> I am in receipt of your letter dated February 28, 2011.  I remind you that in the Complaint brought against Dr. Kalderon and Columbia in the Second Action (as well as against Columbia in the First and Third Actions) one of your claims is that Dr. Kalderon is continuing to discriminate against you through the sending of references. It is for that reason that the Defendants reasonably believe that the sending of any further references at your request by Dr. Kalderon will be labeled by you as a continuation of discrimination, if employment is then not granted.

---

[41]    *See* Def. 56.1 ¶ 20; Apionishev Dep. at 28-29, 32-33 ("Q.  Are you aware of any other reference letters or do you have documents showing any other telephone calls during that period of time [July 7, 2006 through July 7, 2009] from Dr. Kalderon or anyone at Columbia which you now label as libelous or untrue or negative?  A.  No, I don't.").

In my letter to you dated February 24, 2011, I stated that rather than sending reference letters which you could then claim as a continuation of discrimination, Columbia would confirm the dates of your employment, position held and salary information (if so desired), to any third party you request.  If, rather than such information, you still want a personal reference from Dr. Kalderon, Columbia and Dr. Kalderon will agree that Dr. Kalderon will send a letter in the form annexed hereto to a requested third party.  You cannot dictate the contents of a recommendation letter and Dr. Kalderon is comfortable sending the enclosed form of letter which is totally accurate.  I caution you that while Dr. Kalderon will agree to write such letter, he will not agree to any telephone calls with third parties or oral references, because you have distorted them in the past.

Please let me know if you wish written references in the form annexed hereto to be sent to any third party and then provide me with the name and address of such party.[42]

After the Letter was distributed, Columbia agreed to one further modification to the form of the proposed letter of reference,[43] thereby giving Apionishev a choice as to which reference letter he wanted Columbia to send to prospective employers.[44]  Apparently, Apionishev did not object to either version of the

---

[42]     Ex. F to the Toback Aff.

[43]     The revised letter deleted the last sentence, "Sergey left the lab in the Fall of 2004 because I am unable to support post-docs beyond four years or so." *Compare* Ex. 9 to Affidavit in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment with *id.,* Ex. 10 at 2.

[44]     *See* Ex. G to the Toback Aff., 3/14/11 email to Apionishev from Toback ("I remind you that if you want the reference letters in either of the 2 forms that I provided for your review, you must request same from me, advise me as to

proposed letter of reference, nor did he choose one version over the other.[45]

      After Dr. Kalderon read the March 2, 2011 Letter, he sent the March 2, 2011 Email to Toback, which he inadvertently copied to Apionishev, stating as follows:

> I am not the lawyer here but I would be asking not only that Sergey would like the letter sent but that he explicitly acknowledges that there is no discrimination in this letter and that it provides sufficient information, so that no telephone calls (or similar) are necessary or desirable (and that absence of such informal communication will not be considered discriminatory). As it is, it seems that Sergey could simply say he wants the letters sent (because he wants to use it to his legal advantage).[46]

Within minutes of this inadvertent disclosure, Toback emailed Apionishev, notifying him of the error on Dr. Kalderon's part and informing him that it was defendant's position that the inadvertent disclosure of the March 2, 2011 Email should not be viewed as a waiver of attorney/client privilege.[47]  Nonetheless, plaintiff now characterizes both the March 2, 2011 Letter and Email as new

---

which of the 2 forms you want, and give me the names and addresses for the third parties who are to get the letters.").

    [45]    *See id.*, 3/15/11 email from Apionishev to Toback ("I am working on the list of potential employers, I will let you know of cause [sic] of my decision as soon as I can.").

    [46]    Ex. H to the Toback Aff.

    [47]    *See* Ex. I to the Toback Aff.

evidence of discriminatory retaliation.

### 3.    Plaintiff's Opposition to Defendant's Motion

Because plaintiff is pro se, this Court directed him to submit his opposition papers, if any, to the Pro Se Office and serve such papers upon defendant's counsel.[48]  Taking this advice to the extreme, plaintiff filed the following seven documents in opposition to Columbia's motion for summary judgment: Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Docket Entry # 78); Affidavit in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl. Aff.") (Docket Entry # 79); Plaintiff's Opposition to Defendant's "Statement of Undisputed Facts" (Docket Entry # 81); Affidavit in Support of Plaintiff's Opposition to Defendant's Reply Memorandum & Motion for Summary Judgment (Docket Entry # 82); Plaintiff's Statement of Disputed and Undisputed Issues of Material Fact (Docket Entry # 83); Plaintiff's Opposition to Defendant's Reply Memorandum of Law (Docket Entry # 84); and a Letter to this Court dated November 16, 2011 (Docket Entry # 85).[49]

---

[48]    *See* 9/14/11 Order (Docket Entry # 77).

[49]    Needless to say, the filing of so many documents in opposition to a single motion for summary judgment violates several provisions of my Individual Rules and Procedures.  More importantly, plaintiff does himself a disservice by inundating the Court with page after single-spaced page of never-ending narrative unsupported by law and/or fact.

In his opposition papers, plaintiff attempts to identify instances of retaliation and defamation separate and apart from the four Letters of Reference. For example, in his first Affidavit, plaintiff includes an email he received from a potential employer, Dr. Hung-Teh Kao, on March 15, 2006, which states: "Dear Sergey, Last week I spoke with Dan Kalderon about you.  I felt he gave me a fair evaluation of you.  However, after giving it much thought, I regret to say that I've decided not to offer you the position."[50]  Appended to the same exhibit is a transcript of excerpted portions of telephone conversations between Dr. Kao and Apionishev which states, in pertinent part, as follows:

> **Plaintiff Apionishev:** Hell Dr. Kao.  It's me again, Sergey.  I am trying to understand what is going on, maybe I should change career[s] or something...  I am not sure, because, as you said Dr. Kalderon told you that, the list of professions I applied for was kind of strange or something, and ...he said also, that I will not get alon[g] with people in a small lab?"

> **Potential Employer:** "I know, he made it difficult for you, it would be difficult obtaining a job... in a... lab-like environment, however, I mean, you teach, right?[51]

Their conversation continued:

> **Plaintiff Apionishev:** [H]e told you, it definitely leave the definite picture in your mind that you do not want to hire

---

[50]    Ex. 2 to Pl. Aff. at 1.

[51]    *Id.* at 3 (underline in original).

> me even though I am a good scientist or bad scientist it
> does not matter, but based on these particular issues [t]hat
> he described.
>
> **Potential Employer Dr. Kao:**  Yes and I am afraid, you
> know that, even if some question would come up, I would
> have to do that, even if a question mark or even if a minor
> comment.  I would have to do that, because well you know
> that is kind of a risk.[52]

Plaintiff does not provide any dates for the above conversations.  Accordingly, it

must be assumed that plaintiff's telephone conversations with Dr. Kao took place

around the same time as their emails, which are dated March 1, 3, and 15, 2006.[53]

Plaintiff also claims that Dr. Kalderon retaliated against him by

preventing him from obtaining a position at Yeshiva University in 2009.

According to plaintiff, Dr. Kalderon caused Dr. Claude Desplan to send a negative

email to Dr. Andreas Jenny of Yeshiva University, urging Dr. Jenny not to hire

plaintiff.[54]  Apart from these unsuccessful attempts to show instances of retaliation

---

[52]     *Id.* at 4 (ellipses omitted).

[53]     Plaintiff's intentional tort claims are limited to instances of
defamation occurring in the one-year period July 7, 2008 to July 7, 2009.  Thus,
even if this Court were to accept plaintiff's self-made audio transcripts as evidence,
they do not support a claim for slander as any offending communication took place
outside the limitations period.  *See infra* Part IV.B.

[54]     *See* Pl. Aff. at 4.  *See also id.*, Ex. 4 (6/8/09 email from Dr. Claude
Desplan to Dr. Andreas Jenny stating the following: "Andreas: Sergey Apionishev
has asked me to write a letter to support him.  I would suggest that you pass on
him.  But please, do not quote me/Claude").

18

and defamation outside the four Letters of Reference, plaintiff's opposition papers are devoid of any credible admissible evidence that could support his retaliation and/or defamation claims.

## III.   LEGAL STANDARDS

### A.   Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[55]  "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  A fact is material if it might affect the outcome of the suit  under the governing law.'"[56]  In a summary judgment setting, "[t]he moving party bears the burden of establishing the absence of any genuine issue of material fact."[57]  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the

---

[55]     Fed. R. Civ. P. 56(a).

[56]     *Fincher v. Depository Trust & Clearing Corp.,* 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)).

[57]     *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).

nonmovant's claim."[58]  In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact.  The non-moving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,'"[59] and cannot "'rely on conclusory allegations or unsubstantiated speculation.'"[60]

Bald assertions, unsupported by evidence, cannot overcome a properly supported motion for summary judgment.[61]  And while courts are obliged to "construe complaints filed by pro se litigants liberally and 'interpret them to raise the strongest arguments that they suggest,'"[62] conclusory allegations, conjecture and speculation are insufficient to avoid summary judgment within the context of a

---

[58]     *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009).

[59]     *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

[60]     *Id.* (quoting *Federal Deposit Ins. Corp. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

[61]     *See Dixon v. Zenk*, 361 Fed. App'x 218, 219 (2d Cir. 2010) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).  *See also Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999) ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.").

[62]     *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (italics omitted) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

retaliation claim brought by a pro se plaintiff under Title VII and the ADA.[63]

In deciding a motion for summary judgment, a court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'"[64]  However, "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[65] "'The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried.'"[66]

## B.    Retaliation

Retaliation claims under Title VII, the ADA, Title IX, and the State and City Human Rights Laws are analyzed under the same "burden-shifting"

---

[63]    *See Edwards v. Elmhurst Hosp. Ctr.*, No. 07-CV-2452, 2009 WL 6683365, at *6 (E.D.N.Y. Sept. 17, 2009) ("Plaintiff's conclusory allegation that 'upper management' knew that he had filed a charge of discrimination seven years earlier when he worked in a different department within the same hospital, does not create a genuine issue of material fact and is insufficient to withstand defendant's motion for summary judgment.") (citation omitted).

[64]    *Brod v. Omya, Inc.,* 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).

[65]    *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)) (emphasis removed).

[66]    *Brod*, 653 F.3d at 164 (quoting *Wilson v. Northwest. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)).

framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*.[67]  "Title VII forbids an employer to retaliate against an employee for, *inter alia*, complaining of employment discrimination prohibited by Title VII[.]"[68] "Title VII's anti-discrimination and anti-retaliation provisions 'are not coterminous'; anti-retaliation protection is broader and 'extends beyond workplace-related or employment-related retaliatory acts and harm.'"[69]

To establish a prima facie case of retaliation, a plaintiff must show that: (1) he was engaged in a protected activity, *e.g.,* by opposing an unlawful practice; (2) his employer was aware of this activity; (3) he suffered an adverse employment action;  and (4) there is a causal connection between the protected

---

[67]     411 U.S. 792 (1973).  *See Platt v. Incorporated Village of Southampton*, 391 Fed. App'x 62, 64 n.1 (2d Cir. 2010) (stating that retaliation claims under the ADA and Title VII are analyzed under the same burden-shifting framework set forth in *McDonnell Douglas*); *Bastian v. New York City Dep't of Educ.*, No. 04 Civ. 7450, 2008 WL 2930529, at *7 (S.D.N.Y. July 29, 2008) (stating that Title IX retaliation claims are analyzed using the same *McDonnell Douglas* burden-shifting framework applicable to Title VII cases); *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) ("This Court has determined that a plaintiff's discrimination claims under both the NYSHRL and the NYCHRL are subject to the burden-shifting analysis applied to discrimination claims under Title VII.").

[68]     *Kessler v. Westchester County Dep't of Social Servs.*, 461 F.3d 199, 205 (2d Cir. 2006) (citing 42 U.S.C. § 2000e-3(a)).

[69]     *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (quoting *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)).

22

activity and the adverse employment action (in other words, that a retaliatory motive played a part in the adverse action).[70]  Within the context of the third element, an  adverse employment action is an action sufficiently severe to "dissuade a reasonable worker from making or supporting a complaint or charge of discrimination."[71]  With regard to the final element, "causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."[72]  If a plaintiff establishes a prima facie case of retaliation, a presumption of retaliation arises and the case proceeds to the second step of the *McDonnell Douglas* framework.[73]

> [U]nder the second step of the burden-shifting analysis, the onus falls on the employer to articulate a legitimate,

---

[70]     *See Kessler*, 461 F.3d at 205-06.

[71]     *Burlington Northern*, 548 U.S. at 57.

[72]     *Hicks*, 593 F.3d at 170 (quoting *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

[73]     *See Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) ("If the plaintiff [establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate 'some legitimate, non-discriminatory reason' for its action.") (quoting *McDonnell Douglas* ,411 U.S. at 802).

non-retaliatory reason for the adverse employment action. Finally, as for the third step, once an employer offers such proof, the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action.  In this regard, a retaliation claim follows the familiar burden-shifting framework developed to evaluate allegations of disparate treatment.[74]

## C.    Intentional Tort

### 1.    Defamation

Under New York law, the term "slander" encompass oral defamatory statements, the term "libel" encompasses written defamatory statements, and both terms are encompassed in the term "defamation."[75]  The elements of a defamation claim include: "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and, it must either cause special harm or constitute defamation per se."[76]  The four categories of defamation per se consist of statements: "[1] charging plaintiff with a serious crime; [2] that tend to injure another in his or her trade, business or

---

[74]    *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (citations omitted).

[75]    *See Villacorta v. Saks, Inc.*, No. 100168/2007, 2011 WL 2535058 , at *8 n.7 (Sup. Ct. N.Y. Co. May 6, 2011) ("[B]oth terms – 'slander,' *i.e.*, oral defamatory statements and 'libel,' *i.e.*, written defamatory statements, – are encompassed in the term of 'defamation.'").

[76]    *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (1st Dep't 1999).

profession; [3] that plaintiff has a loathsome disease; or [4] imputing unchastity to a woman."[77]   "When statements fall within one of these categories, the law presumes that damages will result, and they need not be alleged or proven."[78] However, "[e]xpressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation."[79]

## IV.   DISCUSSION

### A.   Plaintiff's Retaliation Claims Must Be Dismissed for Failure to Establish a Prima Facie Case

Plaintiff's surviving retaliation claims were limited to claims relating to the letter of references Dr. Kalderon sent to prospective employers after Apionishev's termination and within either of the two limitations periods (the three year period preceding July 7, 2009, and the three-year period preceding October 5, 2010).[80]   However, the only evidence that exists in support of plaintiff's claim of

---

[77]   *Liberman v. Gelstein*, 80 N.Y.2d 429, 435 (1992).

[78]   *Id.*

[79]   *Mann v. Abel*, 10 N.Y.3d 271, 276 (2008).

[80]   *See Apionishev*, 2011 WL 1197637, at *7 n.88 ("'The only claim that Columbia is not seeking to dismiss is that limited to allegations of discriminatory, retaliatory references sent within three years of the filing of [the] Complaint.'") (quoting Defendant's Reply Memorandum of Law in Further Support of Its Motion for Judgment on the Pleadings at 3) (alteration in original).

ongoing retaliation (Claim 12) consists of the four Letters of Reference. Moreover, plaintiff's only objection to the Letters of Reference relates to the "norms of productivity" paragraphs contained therein. For purposes of the instant motion, Columbia is not contesting the first two elements of a prima facie case of retaliation (employer's awareness that employee was engaged in a protected activity).[81] Columbia does argue that Apionishev has not suffered an adverse employment action and that he cannot demonstrate a causal connection between his protected activity and any alleged adverse employment action.

### 1.    Adverse Employment Action

"[A]n adverse employment action in the retaliation context need not affect the terms and conditions of employment, but rather need only be harmful to the point that they are likely to dissuade a reasonable employee from making or supporting a charge of discrimination."[82] In this regard, this Court previously found that the distribution of *negative* letters of reference *could* constitute an adverse employment action.[83] However, the only objectionable language contained

---

[81]    *See* Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 9.

[82]    *Memnon v. Clifford Chance US LLP*, 667 F. Supp. 2d 334, 342 (S.D.N.Y. 2009) (citing *Burlington Northern*, 548 U.S. at 57, 64 & 68).

[83]    *See Apionishev*, 2011 WL 1197637, at *7 n.88 (citing *Memnon*, 667 F. Supp. 2d at 342-43 ("There is substantial support in the case law of this Circuit that

in the Letters of Reference is the "norms of productivity" paragraphs contained

therein.  This paragraph contains the following language (identical in three of the

Letters of Reference and substantially similar in the fourth):

> I am not certain if you are aware of the norms for
> productivity in this type of Drosophila research.  It is
> common for a single successful project (ending up as one
> paper) to take about two years to complete once you have
> established a clear entry-point of interest.  In my lab both
> students and post-docs have typically taken about 3-4 yrs
> before publishing anything & then produced a second
> (usually the best) paper in another year or so.  While I
> would love to be more productive I give you this as the
> most relevant frame of reference.[84]

The above-quoted language is neither negative nor untrue.  Given the neutrality of

this language, plaintiff has failed to establish the first element of a prima facie case

of retaliation – that he suffered an *adverse* employment action.

### 2.    Lack of Causation

Assuming, *arguendo*, that the "norms of productivity" paragraphs can

somehow be seen as retaliatory, I now turn to causation.  Plaintiff has no

admissible evidence regarding causation, either direct or indirect.  Apionishev did

not depose any prospective employer, nor did he obtain any affidavits from them.

---

a former employer's spreading of negative information or references to a
prospective employer is sufficient to constitute an adverse employment action in
the retaliation context.)).

[84]    Ex. C to the Kalderon Aff. (second page of first three letters).

Thus, there is no direct evidence that Dr. Kalderon's letters of reference caused, or even contributed to, plaintiff's failure to secure employment from any prospective employer.  As explained by the Second Circuit:

> Where, however, there is no admissible evidence that the statements of the former employer caused or contributed to the rejection by the prospective employer, the plaintiff has failed to present a prima facie case.  *See, e.g., Bailey v. USX Corp.*, 850 F.2d 1506, 1508 (11th Cir. 1988) (plaintiff failed to establish a prima facie case of retaliation under Title VII where he failed to prove that prospective employer's failure to hire him was causally related to the negative reference provided by his former employer).[85]

Nor can causation be established indirectly, through reference to the temporal proximity between the protected activity and the alleged retaliation. Here, plaintiff complained to the University about the conditions of his employment on April 21, 2004, but the first letter of reference was sent on January 7, 2008, almost four years later.  The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action."[86]  Nonetheless, "a passage of two months

---

[85]     *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999).

[86]     *Gorman-Bakos v. Cornell Co-op Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001).

between the protected activity and the adverse employment action seems to be the dividing line."[87]   Accordingly, a passage of years, as opposed to months, is surely too temporally remote to establish causation.

Nor is there an inference of causation with regard to plaintiff's EEOC Charge, which the EEOC sent to Columbia on October 28, 2008.  By that time, three of the four Letters of Reference had already been sent.  The only letter sent after October 28, 2008 was the July 22, 2009 reference letter to Dr. Jenny.  That letter, however, was sent nearly nine months after Columbia was notified of the EEOC Charge.  This intervening time period is simply too long to raise an inference of causation from temporal proximity.[88]

In sum, Apionishev has no admissible evidence that the four Letters of Reference caused, or even contributed to, his failure to secure employment from any of the four prospective employers.  Given this lack of causation, plaintiff has

---

[87]    *Cunningham v. Consolidated Edison Inc.*, No. CV-03-3522, 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006).

[88]    *See Hollander v. American Cyanamid Co.*, 895 F.2d 80, 86 (2d Cir. 1990) (three and a half months between protected activity and adverse action insufficient to establish causation); *Garrett v. Garden City Hotel, Inc.*, No. 05 Civ. 962, 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007) ("[D]istrict courts in this Circuit have consistently held that a passage of more than two months between the protected activity and the adverse employment action does not allow for an inference of causation.") (collecting cases).

failed to establish a prima facie case of retaliation.[89]  Accordingly, plaintiff's

claims for ongoing retaliation (Claim 12), whether brought under Title VII, the

ADA, or state and local law, are hereby dismissed with prejudice.

### B.    Plaintiff's Defamation Claims Must Be Dismissed

Plaintiff's claims for intentional tort, including his claims for libel and

slander (collectively, "defamation"), are limited to defamatory communications

occurring on or after July 7, 2008.  As part of his defamation claims (Claims 9 and

10), plaintiff alleges that Dr. Kalderon wrote defamatory letters of recommendation

(libel) and "must" have made negative telephone calls to prospective employers

(slander) based on plaintiff's failure to secure employment.  However, plaintiff has

no evidence to support a claim for slander because the only "evidence" he has

offered involves a purported telephone conversation between Dr. Kalderon and Dr.

Kao in March 2006, which precedes the limitations period by more than two years.

---

[89]    Assuming, *arguendo*, that plaintiff could establish a prima facie case of retaliation, Columbia has set forth a legitimate, non-retaliatory reason for including the "norms of productivity" paragraph in the Letters of Reference. According to Dr. Kalderon, he included this information in his reference letters not to criticize Apionishev but to dispel any reservations a prospective employer may have over Apionishev's productivity based on a different and inappropriate frame of reference. *See* Kalderon Aff. ¶¶ 8-9.  Apionishev has not shown pretext, *i.e.*, that the articulated reason given by Dr. Kalderon for placing the "norms of productivity" paragraph in the letters was false and that the real reason was to retaliate against plaintiff.  Accordingly, plaintiff's retaliation claims must be dismissed as a matter of law at any step of the three-step, burden-shifting framework of *McDonnell Douglas*.

In fact, during his deposition, plaintiff admitted that he has no other evidence of slanderous telephone calls.[90]  Accordingly, plaintiff's slander claim is dismissed because there is simply no evidence to support such a claim.

Plaintiff's libel claim, reduced to the "norms of productivity" paragraph in the Kalderon/Jenny reference letter of July 22, 2009, must be dismissed because that paragraph consists of Dr. Kalderon's personal opinion regarding the average amount of time for the publication of research from his laboratory.[91]  Expressions of opinion are not actionable.[92]

> Plaintiffs' offering amounts to little more than speculation as to what might have been said or understood by those employers who ultimately did not hire him.  "Suspicion, surmise and accusation are not enough to defeat a motion for summary judgment." *Pappalardo v. Meisel*, 491 N.Y.S.2d 723 (2d Dep't 1985) (quoting *Shapiro v. Health Insur. Plan of Greater New York*, 7 N.Y.2d 56, 56 [1959]). Moreover, even if proven, this speculation would amount to no more than a former employer's protected opinion regarding an employee's performance and the cause of his termination. *See Edsell v. Indep. Freightway, Inc.*, Civ. A.

---

[90]     *See* Apionishev Dep. at 28-29 and 32.

[91]     At his deposition, plaintiff admitted that there is nothing in this letter that is libelous.  *See* Apionishev Dep. at 11. Moreover, nothing in the letter charges plaintiff with any wrongdoing or otherwise impugns his general competence or fitness.

[92]     *Rinaldi v Holt, Rinehart & Winston*, 42 N.Y.2d 369, 380 (1977) (stating that "[o]pinions, false or not, libelous or not, are constitutionally protected and may not be the subject of private damage actions").

No. 94-CV-227, 1995 WL 375827 at *4 (N.D.N.Y. Jun.16, 1995) ("A defamation action cannot be based on a statement of opinion, and it is a question of law whether a statement is an expression of opinion or fact.  As a general rule, statements by an employer about an employee's work performance are expressions of opinion."), *aff'd*, 101 F.3d 681 (2d Cir. 1996))[.][93]

Furthermore, courts have long held that communications between a plaintiff's former employer and his prospective employer cannot support a defamation claim because New York recognizes a "qualified privilege" for "[c]ommunications addressing the employee's performance, his character, or the reason for his termination[.]"[94]  This qualified privilege "can only be overcome by a showing that the defamatory remarks were made with actual malice."[95]   "To show actual malice under the common law, a plaintiff must prove spite, ill will, or 'such culpable recklessness or gross negligence as constitutes a wanton disregard

---

[93]     *Vilien v. Department of Educ. of City of New York*, No. 06 Civ. 3491, 2009 WL 857458, at *7 (S.D.N.Y. Mar. 31, 2009) (parallel citations omitted).

[94]     *Id.* ("Qualified immunity typically attaches to communications between a former and prospective employer.") (citing *Albert v. Loksen*, 239 F.3d 256, 272 (2d Cir. 2001) ("Communications by supervisors or co-workers made in connection with the evaluation of an employee's performance, including allegations of employee misconduct and communications regarding the reasons for an employee's discharge, fall within the privilege.")).

[95]     *Id.* (quotation marks and citation omitted).

of the rights of others.'"[96] "Mere conclusory allegations, or charges based upon surmise, conjecture, and suspicion are insufficient to defeat a claim of qualified privilege."[97]  Although plaintiff's opinion about the "norms of productivity" may differ from that of Dr. Kalderon, there is no evidence of malice on Dr. Kalderon's part.  Accordingly, plaintiff's libel claim must be dismissed because the objectionable writing consists of a personal opinion which is protected by a qualified privilege.

### C.   The March 2, 2011 Letter and Email Are Not Admissible

The March 2, 2011 Letter concerns the manner in which Columbia would send future reference letters on plaintiff's behalf.  Plaintiff has alleged that the retaliation he suffers, resulting from the issuance of negative letters of reference, is ongoing.  Thus, plaintiff's request for continuing letters of reference, despite the instant litigation, led Columbia to the reasonable belief that if a reference letter was sent and employment was not granted, then that reference letter would be used by plaintiff as evidence in support of his allegation of ongoing retaliation.  Despite Columbia's reluctance, the March 2, 2011 Letter outlined the

---

[96]     *Id.* (quoting *Konowitz v. Archway Sch., Inc.*, 409 N.Y.S.2d 757, 759 (2d Dep't 1978)).

[97]     *Furci v A.F.C. Contracting Enters., Inc.*, 680 N.Y.S.2d 673, 673 (2d Dep't 1998) (quotation marks and citation omitted).

procedures to be used for future references.  The Letter also explained that Dr. Kalderon would no longer participate in any telephone calls with third parties. Thus, the March 2, 2011 Letter is pertinent to the pending litigation.

Written communications made in the course of litigation between counsel for a party and a party representing himself pro se are "absolutely privileged" if they are "pertinent to the litigation."[98]  "The test is 'extremely liberal' and 'embraces anything that may . . possibly or plausibly be relevant or pertinent, with the barest rationality, divorced from any palpable or pragmatic degree of probability.'"[99]  Because the March 2, 2011 Letter is pertinent to this litigation, it is absolutely privileged and cannot be used to support plaintiff's retaliation claim or any other claim.[100]

The same is true of the inadvertent disclosure of the March 2, 2011 Email. After Dr. Kalderon reviewed the March 2, 2011 Letter, he replied to Toback by sending him the Email, a copy of which was inadvertently sent to Apionishev.

---

[98]     *Cellamare v. Millbank, Tweed, Hadley & McCloy LLP*, No. 03-CV-0039, 2003 WL 22937683, at *9 (E.D.N.Y. Dec. 2, 2003).

[99]     *Id.* (quoting *Grasso v. Mathew*, 564 N.Y.S.2d 576, 578 (3rd Dep't 1991)).

[100]     Moreover, there is nothing in the body of the Letter that could be construed as retaliatory or otherwise inappropriate.

Within minutes of the disclosure, Toback sent notice to Apionishev, by email, informing him that the Email was sent to him in error and that it was not a waiver of attorney/client privilege.

Inadvertent disclosures are most often seen during the course of discovery. "Although the federal courts have differed as to the legal consequences of a party's inadvertent disclosure of privileged information, the general consensus in this district is that the disclosing party may demonstrate, in appropriate circumstances, that such production does not constitute a waiver of the privilege or work-product immunity and that it is entitled to the return of the mistakenly produced documents."[101]   In determining whether an inadvertent disclosure waives privilege, courts in the Second Circuit have adopted a "middle of the road approach."[102]   Under this flexible test, courts are called on to balance the following factors: (1) "the reasonableness of the precautions to prevent inadvertent disclosure;" (2) "the time taken to rectify the error;" (3) "the scope of the discovery;" (4) "the extent of the disclosure;" and (5) "an over[arching] issue of

---

[101]     *Lava Trading, Inc. v. Hartford Fire Ins. Co.*, No. 03 Civ. 7037, 2005 WL 66892, at *2 (S.D.N.Y. Jan. 11, 2005) (citing *United States v. Rigas*, 281 F. Supp. 2d 733, 737-38 (S.D.N.Y. 2003) (citing cases)).

[102]     *Rigas*, 281 F. Supp. 2d at 737.

35

fairness.[103]

       While the Court finds the flexible approach described above to be appropriate outside the context of discovery, only two of the *Lois* factors are relevant here: the length of delay and fairness.  As for delay, Toback acted within minutes of learning that Dr. Kalderon mistakenly copied Apionishev on the Email.  Toback's immediate assertion of privilege weighs heavily against a finding of waiver.[104]  The fairness factor also weighs against a finding of waiver.  Here, defendant's counsel did not make the disclosure, one of defendant's employees did.  It seems unfair to let Apionishev benefit by a mistake made by a lay person, outside of counsel's control.  Because there was no waiver of privilege by the inadvertent disclosure of the Email, Apionishev cannot use the Email in support of his claims.[105]

---

[103]    *Lois Sportswear, USA, Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985).

[104]    *See Rigas*, 281 F. Supp. 2d at 741 ("Inadvertent disclosure has been held to be remedied when the privilege is asserted immediately upon discovery of the disclosure and a prompt request is made for the return of the privileged documents.") (quotation marks and citation omitted).

[105]    The practical effect of this ruling is negligible as there is nothing in the Email that can be construed as evidence of retaliation; Dr. Kalderon is simply discussing litigation strategy with Columbia's attorney.

## V.   CONCLUSION

For the foregoing reasons, any and all claims that survived the motion for judgment on the pleadings are hereby dismissed with prejudice, including Apionishev's ongoing retaliation claims (Claim 12) and his defamation claims (those portions of Claims 9 and 10 that were not time-barred).  The Clerk of the Court is directed to close defendant's motion for summary judgment (Docket Entry # 70) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            January 23, 2012

**- Appearances -**

**Plaintiff (Pro Se):**

Sergey Apionishev
320 Empire Boulevard, Apt. 6E
Brooklyn, NY 11225
(917) 916-6951

**For Defendant:**

Arthur M. Toback, Esq.
Toback, Bernstein & Reiss LLP
15 West 44th Street, 12th Floor
New York, NY 10036
(212) 869-2300